Argued and submitted November 21, 1997, affirmed October 28, 1998

In the Matter of the Compensation of
Brian R. Hartman, Claimant, and
In the Matter of the Complying Status of
NCE-Deer Lodge Apartments.

NCE-DEER LODGE APARTMENTS,
*Petitioner,*

*v.*

Brian R. HARTMAN;
Johnston and Culberson, Inc.; and
Department of Consumer and Business Services,
*Respondents.*

(95-04409, 95-04620; CA A93941)

966 P2d 245

Ronald W. Atwood argued the cause and filed the brief for petitioner.

Robert Wollheim argued the cause for respondent Brian R. Hartman. With him on the brief were Welch, Bruun, Green & Wollheim, James C. Egan and Emmons, Kropp, Kryger, et al.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondents Johnston and Culberson, Inc., and Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

David L. Runner filed the brief for respondent SAIF Corporation.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

636

ARMSTRONG, J.

Employer seeks review of a decision by the Workers' Compensation Board declaring him to be a noncomplying employer.[1] We review for errors of law, ORS 183.482(7)(a), and affirm.

The facts found by the Board are as follows. Employer is an Oregon landlord who owns a small complex of rental units near Tangent, Oregon, known as the Deer Lodge Apartments. At all relevant times, he employed Nina Fintel as his property manager, paying her $150 per month for her services. He also employed claimant, who was a tenant in one of the rental units, to perform general maintenance and property work at the Deer Lodge Apartments and at another property owned by employer. At least once, claimant's wages were used to offset his $200 monthly rent. During one 30-day period, from June 12 to July 11, 1994, claimant and others performed maintenance work and were paid a total labor cost of $480.25 by employer.

On October 12, 1994, claimant slipped and fell while clearing fallen apples from a common lawn that he was preparing to mow. He broke his right tibia and fibula in the fall.

In January 1995, claimant filed a claim for workers' compensation benefits. Employer did not carry workers' compensation insurance for the employees of the Deer Lodge Apartments. The Workers' Compensation Division Compliance Section determined that employer employed one or more subject workers and, therefore, was subject to the Workers' Compensation Law but had not complied with it by carrying workers' compensation insurance for his subject employees. It directed SAIF to process the claim, which SAIF accepted and for which it paid benefits to claimant. Employer requested a hearing, contending that, because claimant's employment was casual and was in the course of the trade, business or profession of a nonsubject employer, claimant was a nonsubject worker. The administrative law judge (ALJ) concluded that, because there had been a single 30-day

---

[1] Employer does not seek review of the Board's conclusion that claimant's injury was compensable.

period during the course of claimant's employment in which employer's labor costs had exceeded $500, claimant's employment was not casual, and employer was required to provide workers' compensation coverage. On review, the Board adopted and affirmed the ALJ's order.

1.     At issue is the meaning of ORS 656.027, which provides:

> "All workers are subject to this chapter except those nonsubject workers described in the following subsections:
>
> "* * * * *
>
> "(3)(a)   A worker whose employment is casual and either:
>
> "(A)   The employment is not in the course of the trade, business or profession of the employer; or
>
> "(B)   The employment is in the course of the trade, business or profession of a nonsubject employer.
>
> "(b)   For the purpose of this subsection, *'casual' refers only to employments where the work in any 30-day period, without regard to the number of workers employed, involves a total labor cost of less than $500.*"[2]

(Emphasis added.) The specific issue is the proper interpretation of the phrase "any 30-day period." Respondents argue that the text of the statute is clear and unambiguous, requiring any employer whose labor costs have *ever* exceeded $500 for *any given* 30-day period to purchase workers' compensation coverage for any workers still employed after that period, even though the employer's labor costs may never reach $500 again.[3] Employer offers his own interpretation,

---

[2] Before the 1995 revision of the Workers' Compensation Law, the statutory limit on labor costs was $200. The 1995 revision increased the limit to $500. Because a final order had not been issued in this case before the 1995 revision took effect, the new limit applies. *Volk v. America West Airlines*, 135 Or App 565, 573, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996).

[3] Although acknowledging that their interpretation cuts a broad swath, respondents contend that employers can avoid a harsh result merely by terminating the employment agreements with those workers and establishing "new" employments to which the previous labor period would not apply. Respondents apparently assume that the situation is likely to occur only in "at-will" employments, where such terminations are possible. We agree with employer that such a solution is absurd, and that the legislature could not have intended for employers to hire and fire workers willy-nilly in order to avoid paying for coverage. Nevertheless, we agree with respondents' interpretation of the statute.

which would set the applicable measuring period at the 30 days surrounding the injury.

We conclude that, under the plain language of the statute, an employer whose labor costs exceed the statutory limit for at least one 30-day period must provide workers' compensation coverage to its employees, even if its costs never again reach that level. The statute refers to *any* 30-day period and does not require any relationship between the period in which the worker is injured and the 30-day period in which the labor costs exceed the statutory limit. That conclusion is consistent with our interpretation of an earlier version of the statute in *Gordon v. Farrell*, 85 Or App 590, 737 P2d 654, *rev den* 304 Or 55 (1987).[4] In that case, the claimant worked from January to mid-April, for an average of $320 per month. Most of his work then ended. On May 8, the claimant was working on a special job when he was injured. After concluding that the special task was not a significant enough departure from the claimant's usual duties to constitute employment outside the course of trade, business or profession of his employers, we addressed the employers' argument that they were not required to provide workers' compensation coverage, because their labor costs for the 30-day period preceding the injury did not exceed the statutory limit. *Id.* at 594. We concluded that, because the evidence showed that the employer had *in the past* exceeded the statutory minimum, the statutory requirement had been met and the casual employment exemption did not apply. *Id.*; *cf. Konell v. Konell*, 48 Or App 551, 617 P2d 313 (1980), *rev den* 290 Or 449 (1981) (no evidence that employer had *ever* met the statutory minimum).

■ With that in mind, we turn to the facts of this case. The evidence before the Board was that employer's payroll for the Deer Lodge Apartments included Nina Fintel and claimant. Claimant was assisted on occasion by friends, who were paid out of claimant's earnings. Nina Fintel was paid $150 per month. Claimant's monthly earnings varied from month to month. In June 1994, claimant's wages for the work

---

[4] The only relevant difference between the current version of ORS 656.027(3)(b) and the version that was in effect in 1987 is that the statutory limit for the casual employment exemption in 1987 was $200.

he typically performed were $191. In July 1994, he earned $131. From June 18 to 29, 1994, claimant and two helpers performed additional work, however, repairing a mobile home from which a tenant had been evicted. That additional labor, at a cost of $250, when combined with claimant's other earnings and Fintel's wage, drove employer's labor costs for the 30-day period of June 12 to July 11 over the statutory minimum of $500. Accordingly, employer no longer qualified for the casual worker exemption to the requirement that it provide workers' compensation coverage for its employees, and the Board correctly upheld employer's designation as a noncomplying employer.

Affirmed.